THE STATE OF FLORIDA *ex rel.* THE STATE LIVE STOCK
SANITARY BOARD OF THE STATE OF FLORIDA, COMPOSED OF
W. A. McRAE, COMMISSIONER OF AGRICULTURE OF THE
STATE OF FLORIDA, PRESIDENT, W. N. SHEATS, SUPERIN-
TENDENT OF PUBLIC INSTRUCTION OF THE STATE OF FLOR-
IDA, J. C. LUNING, STATE TREASURER OF THE STATE OF
FLORIDA, R. W. STORRS AND W. F. BLACKMAN, *Petitioner,*
v. W. E. GRADDICK, *Respondent.*

Opinion Filed June 18, 1921.

It is not clear that in enacting Sections 13 and 20 of Chapter
7345, Acts of 1917, it was the law making intent to extend
the common law scope of the writ of mandamus, and to
make it applicable to persons who fail or refuse to dip their
cattle pursuant to administrative regulations under the
statute, particularly when the title of the Act indicates no
such intent and such matter may not be properly connected
with the subject that is expressed in the title of the Act.

A Writ of Error to the Circuit Court for Duval County;
Daniel A. Simmons, Judge.

Affirmed.

*Rivers H. Buford,* Attorney General, and *Marvin C.
McIntosh,* Assistant, for Petitioner;

*Butler & Boyer,* for Respondent.

WHITFIELD, J.—A petition for mandamus presented to
the Circuit Judge alleged in effect that the provisions of
Chapter 7345 Acts of 1917, relative to the compulsory
dipping of cattle to eradicate ticks, were duly made appli-
cable in Duval County; that pursuant to such law persons

had been duly required by administrative orders to dip their cattle and that the respondent Graddick had refused to comply with the requirement. It was prayed that the Court "may order that the said W. E. Graddick proceed to dip all the cows, calves, bulls and steers owned by him or in his custody or control in Duval County, Florida hereinbefore described and referred to on the 16th day of June, A. D. 1920, the same being a regular dipping day in Duval County, Florida, and on all such other regular dipping days thereafter as have been heretofore designated or may hereafter be designated by the said State Live Stock Sanitary Board, or upon refusing so to do, that the said W. E. Graddick show good cause, if any he may have."

The Court denied the writ and dismissed the petition.

Writ of error was taken.

An opinion filed by the Circuit Judge is as follows:

"This cause is before the Court upon the application of the relator for an alternative writ of mandamus requiring the respondent to comply with the terms of a rule promulgated under the authority of Chapter 7345, Acts of 1917, requiring owners of cattle to dip them for the purpose of eradicating ticks.

"The law itself does not require dipping, but seems to confer upon the State Live Stock Sanitary Board full authority to make such rule, and the rule has in fact been promulgated.

"For the purposes of the present consideration it will be presumed that the act in question is valid; that it authorizes the Board to make rules requiring owners of

cattle to dip them, and prescribing enforceable penalties for failure to do so; and that the respondent, Graddick, is the owner of cattle required to be dipped, but which he refuses to dip.

"The only question left for consideration is, can the owner be required by mandamus to comply with the rule?

"Section 20 of the Act under consideration is as follows: 'The Circuit Courts of this State in chancery shall have the power to enforce any of the provisions of this Act, and the rule of said Board pursuant thereto, by mandamus, or by temporary or permanent injunction, either or both, upon the application of said Board, against any person who shall violate any provisions of this Act or any such rule or regulation.'

"It is not alleged that the respondent has violated any provision of the Act itself, but that he has violated a rule promulgated under authority of the Act.

"The writ of mandamus is a very ancient process. It comes down to us from that remote past when the king sat personally as Judge of the Court of the King's Bench, and issued the writ or not as it pleased him. Its scope and purpose have been adjudicated in a great array of cases, covering hundreds of years, and springing from every English-speaking commonwealth of the globe. One thing which has long been settled beyond the chance of further dispute is, that the writ will not issue against a private person, but only against officers and boards, and against quasi-public corporations—such, for instance, as railroad companies. The American and English Encyclopedia of Law, 19:744 states the matter thus: 'It is a general rule that mandamus will not lie against one who does not occupy an official or quasi-official position, though a few cases may

be found where the writ has issued against private persons for the enforcement of purely private rights.' The general rule thus stated is supported by the overwhelming weight of adjudicated cases, while the exception springs out of a few isolated cases, some of which have since been repudiated by the courts, deciding them, holding that certain rights between two individuals might thus be enforced.

"The Legislature must have known the scope of this writ when it passed the Tick Eradication Act with Section 20 as a part of it, and if it intended to extend the scope of the writ so as to include private persons, there is no evidence of that intent in the Act itself.

"There are many persons within the purview of the Act who are subject to the writ, because they are public officers; wherefore, Section 20 is perfectly valid and appropriate, even though it be held not to apply to private individuals.

"Writs of injunction and mandamus are sometimes necessary , but a too free use of them, or any extension of them by judicial interpretation ought to be discouraged.

"Maybe a system of sanitation and prophylactic enforcement against individuals by mandamus would conserve the common weal. We probably would make quite a step forward in conserving the public welfare and comfort if all people who have communicable diseases were forced by mandamus to get cured; or if we could in the same manner compel owners of pigpens and earth-closets to keep them sanitary; or if the hoary writ could be invoked to force cerain individuals to take a bath. But this injunctive form of government, whether the injunction be prohibitory or mandatory, has not hitherto been our policy, and I cannot believe that the Legislature would initiate it without a clear statement of an intention to do so.

"The man who refuses to clear his cattle of disease-carrying ticks is guilty of a criminal offense under the Act and Rules of the Board, and, so far as he is concerned, the Legislature apparently intended that this remedy of the public should be exclusive.

"Section 20 attempts to settle all questions as to whether or not the writ will lie against the persons filling the newly created offices and composing the new boards, but I find nothing in it to indicate an intention to extend the scope and operation of the writ so as to include private persons who have heretofore been beyond its reach."

The word "mandamus" in Sections 13 and 20 of Chapter 7345, taken with the peculiar context may have reference to a mandatory injunction. Certainly it is not clear that the law-making intent was to extend the common law scope of the writ of mandamus, and to make it applicable in cases of this nature, particularly when the title of the Act indicates no such intent and such a subject may not be properly connected with the more or less restrictive subject that is expressed in the title of the Act. See Section 16 Art. III State Constitution. Mandamus is not a writ of universal application. See Myers v. State *ex rel.* Thompson, 81 Fla. 32, 87 South. Rep. 80; 86 South. Rep. 505; 18 R. C. L. 143.

Affirmed.

BROWNE, C. J., AND TAYLOR AND WEST, J. J., concur.

ELLIS, J., concurs in conclusion.